**DATAGATE, INC., Plaintiff,**

v.

**HEWLETT–PACKARD COMPANY, Defendant.**

**No. C–86–20018–RPA.**

United States District Court, N.D. California.

Aug. 31, 1987.

Ronald S. Katz, Vanessa Wells, Palo Alto, Cal., for plaintiff.

C. Coleman Bird, Pepper, Hamilton & Scheetz, Washington, D.C., Kurt W. Melchior, Severson, Werson, Berke & Melchior, San Francisco, Cal., S.T. Jack Brigham III, Marcia Howe Adams, Hewlett–Packard Co., Palo Alto, Cal., for defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

AGUILAR, District Judge.

The Court has received, read and considered the papers and pleadings submitted on the defendant's motion for summary judgment in this action, and the Court has heard and considered the oral argument of counsel. Good cause appearing therefor, the Court hereby finds and orders the following.

The plaintiff asserts that the defendant, HP, engaged in certain allegedly anticompetitive practices regarding the service and repair of certain HP hardware products. The plaintiff is a third party maintenance firm ("3PMF") that supplies maintenance and repair services to consumers of HP hardware products. In its Second Amended Complaint ("Complaint"), the plaintiff asserts the following claims:

1) Monopolization (15 U.S.C. § 2);

2) Attempt to monopolize (15 U.S.C. § 2);

3) Illegal tie in [withdrawn by Stipulation and Order pursuant to this Court's previous Order dismissing complaint.];

4) Injunctive relief (15 U.S.C. § 26) [illegal tie-in allegations withdrawn from this claim also];

5) Interference with prospective business advantage;

6) Unfair competition (Cal. B & P §§ 17200, 17500; Cal.Civil Code § 3369);

7) Disparagement; and

8) Defamation.

Claims five through eight are based entirely on state law. The defendant seeks summary judgment on the three remaining federal claims, and then dismissal of the state claims for lack of a federal question.

## DISCUSSION OF THE LAW

The defendant seeks summary judgment on the federal Sherman Act claims based on two separate theories. First, the defendant argues that there has been no injury to competition. Second, it argues that the plaintiff cannot define a market by limiting it to servicing a single manufacturer's computers.

The Court must start with certain basic truths about the nature of and standard for summary judgments. The Court must view all facts and draw all inferences in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). It is also well established that summary judgment is not appropriate where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

At the same time, the Court must remember that the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); quoting Advisory Committee Note to 1963 Amendment to Fed.Rule Civ.Proc. 56(e) 28 U.S.C. App., p. 626. Once the moving party properly asserts the motion, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.Rule Civ.Proc. 56(e). Furthermore, summary judgment properly lies "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Summary judgment is disfavored in complex antitrust litigation if extensive factual determinations must be made concerning intent and motive. *Betaseed Inc. v. U & I Inc.*, 681 F.2d 1203, 1207 (9th Cir.1982). However, it is appropriate "in the absence of any significant probative evidence tending to support the complaint." *Barry v. Blue Cross of California*, 805 F.2d 866, 871 (9th Cir.1985) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir.1985)); *Betaseed* 681 F.2d at 1207. Then it can be applied "in the twinkling of an eye." *Barry,* 805 F.2d at 871 (quoting *NCAA v. Board of Regents* 468 U.S. 85, 109–10 n. 39, 104 S.Ct. 2948, 2964 n. 39, 82 L.Ed.2d 70 (1984)).

*Application to the issues presented here*

Turning to the issues presented here, the Court notes that the parties contest the existence of two elements, each of which is necessary to the maintenance of an antitrust claim. The parties contest both the definition of the relevant market and the existence of an injury to competition.

*Definition of the relevant market*

Datagate states that "[i]n order to determine the relevant market, it is vital to understand the product at issue in this case. That product is the service and repair of HP hardware systems, and more specifically service and repair of HP minicomputer systems." Plaintiff's memorandum in opposition to the motion for summary judgment at 13:14–17. Hewlett Packard vigorously contests Datagate's definition of the relevant market.

Analysis of the relevant market can be quite extensive. In this case, it involves significant questions of both law and fact

concerning the existence of a market limited to servicing the products of a single manufacturer.

On the basis of the documents currently on file in this matter, the Court cannot find that the parties present no genuine issue of material fact concerning the definition of the relevant market. The definition of the relevant market will depend on the resolution of certain factual issues that are now in dispute. Accordingly, and with good cause appearing therefor, the Court hereby DENIES the defendant's motion for summary judgment on the issue of the definition of the relevant market.

Based on the above ruling the Court's analysis will focus on the existence of an injury to competition under any definition of the relevant market.

*The existence of an injury to competition*

This Court twice required the plaintiff to allege in its complaint that the defendant's acts caused an injury to competition. *See* Orders of June 10, 1986, and September 22, 1986. The antitrust laws exist to protect competition and not individual competitors. In other words " 'it is injury to the market not to individual firms, that is significant.' " *Ralph C. Wilson Industries, Inc. v. Chronicle Broadcasting Co.,* 794 F.2d 1359, 1363 (9th Cir.1986) (quoting *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983)).

■ Injury to the market is demonstrated by detriment to consumers in the market in terms of price, quality and availability of the product at issue. *Aspen Skiing Co. v. Aspen Highland Skiing,* 472 U.S. 585, 105 S.Ct. 2857, 2859, 86 L.Ed.2d 467 (1985); *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1484 (9th Cir.1986).

■ Both Datagate's Second Amended Complaint and its opposition to this motion are premised upon the assertion that there has been a reduction in the supply of service providers in the relevant market. Datagate argues that "Consumers of service for HP hardware service have been and are being harmed because the supply of service providers has been and is being reduced, and because the price for service consequently has been and is being raised." Second Amended Complaint, ¶ 46.

The plaintiff asserts that 3PMFs help serve consumers in the relevant market, and it asserts that a reduction in the quantity of 3PMFs will affect competition in the relevant market. The plaintiff supplies expert evidence that HP service prices are higher than IBM's or DEC's for a comparable product, and it also argues that HP's profits are too high but it supplies no specific comparative profit figure. The lynchpin of the plaintiff's argument is clearly that the supply of service providers has indeed been reduced.

The defendant presents evidence that the number of firms that provide service to HP hardware has increased during the relevant time period and that HP users have more service options available to them than three years ago. HP does not categorize those firms that service the minicomputer and the complex peripherals separately from all other service providers. The plaintiff argues that the relevant market is the minicomputer and complex peripherals market and that competition in that market has declined. Due to the procedural posture of this action, this Court has also assumed the market to be as defined by the plaintiff, but the Court cannot accept mere argument that competition has been injured in that market. Because the plaintiff must bear the burden of proof on this issue at trial, the plaintiff must bear the burden of proof on this issue at trial, the plaintiff must supply the Court with facts that indicate the requisite injury to competition.

■ The Complaint alleges that certain HP practices have caused other competitors to lose certain contracts. *See* Complaint at ¶¶ 42–46. The Court has carefully evaluated all the pleadings and papers submitted for evidence of some injury to competition in the relevant market. The Court cannot infer injury to competition solely from certain competitors' loss of customers. This is particularly true where the defendant supplies evidence that certain ac-

counts lost by the specified competitors went to other non–HP competitors in the market.

■ With one exception, the plaintiff does not supply any evidence that the lost accounts or any HP practice drove specific competitors out of business. That exception, Sierra Computers, lost its sole customer, the China Lake Naval Weapons Center. That customer, however, gave its business to the McLaughlin Research Corporation, a 3PMF which newly entered the market. This cannot establish any injury to competition. Even if the Court assumes that Sierra's injury was due to HP's actions, injury to a single competitor will not suffice to establish an anticompetitive effect. *See Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.,* 710 F.2d 1366, 1373 (9th Cir.1983).

The Court finds that the plaintiff has failed to meet its burden of establishing the requisite injury to competition. The defendant supplied evidence that the number of 3PMFs servicing the market has increased and that the consumer has more options available to him now than before the allegedly anticompetitive acts occurred. The plaintiff bears the evidentiary burden at trial, and it has failed to meet that burden here.

Accordingly, the Court hereby GRANTS the defendant's motion for summary judgment to the extent that it relies on the plaintiff's allegations that HP's practices have harmed competition by injuring specific, already existing and practicing 3PMFs.

*Alternative allegations of a chilling effect*

The plaintiff alternatively argues that HP's allegedly anti-competitive conduct has prevented potential competitors from entering the relevant market. According to this theory, the plaintiff asserts that the defendant has harmed competition by chilling new entrants into the market. The Court found that the parties had not sufficiently briefed this issue in their initial papers, and the Court requested supplemental briefing on this issue.

The Court must determine whether a chilling effect on new entrants can constitute a cognizable injury to competition. This raises an interesting issue which exists largely because of the benefits derived by the rapid increase in technology in the computer field. In essence, the plaintiff argues that, even if the consumer has benefitted during the relevant time period, that benefit has been reduced by the anticompetitive conduct of the defendant. The typical Sherman Act case addresses an alleged decrease in competition which causes a decrease in existing benefits to the consumer. In this case, the plaintiff asserts the existence of a decrease in the rate of increase of benefit to consumers.

■ The Court finds that the existence of a chilling effect may constitute an injury to competition in a particular case. However, in order to state such a claim, the plaintiff must demonstrate the existence of a chilling effect, its detrimental effect on competition which harms consumers, and that HP caused the chilling effect. In its Order Requiring Supplemental Briefing On Certain Issues, the Court stated:

> Specifically, the Court seeks briefing on the issue of whether a "chilling effect" on potential entrants to the market can constitute a cognizable injury to competition. The parties must also address the issue of what showing must be made in order to sustain a claim based on the chilling effect. Finally, the parties must specify what facts currently exist in the record to support a finding of an injury to competition based entirely on a chilling effect to potential new entrants to the market.

*Id.* at 2:3–10.

■ In the second stage of its inquiry, the Court must determine what showing the plaintiff must make to sustain a claim based on a chilling effect. It is clear that the plaintiff must show that the defendant's conduct acutally caused potential entrants to refrain from competing in the relevant market. The plaintiff must also demonstrate that the alleged chilling effect harmed competition and injured consumers.

Thirdly, the Court must look to the record to determine what showing the plaintiff has made in this case. In this regard, the Court notes that the plaintiff did not comply with the Court's Order by specifically referring to the record to support a finding of injury to competition.

The plaintiff's showing of injury depends in large part on the declaration of Donald F. Blumberg. HP argues that the Court should disregard Blumberg's declaration on the ground that it fails to comply with Fed.R.Civ.P. 56(e). Rule 56(e) requires that all affidavits submitted in motions for summary judgment shall be made on personal knowledge and shall set forth facts that would be admissible as evidence. HP argues that Blumberg's declaration would not be admissible.

The Court has reviewed Blumberg's declaration in order to determine its admissibility. The Court will consider Blumberg's declaration in ruling on this motion for summary judgment. By considering the evidence at this stage, the Court is not finding that the study, its results, or Blumberg's interpretation of its results, will be automatically admissible at trial. Instead, the Court finds that Blumberg's declaration sufficiently complies with Rule 56 to warrant consideration in the instant motion for summary judgment. The Court will consider separately any objections properly asserted at trial in this matter.

Blumberg states that HP's "ISO Policy" has chilled potential entrants because they believe that would be unable to obtain the parts and training necessary to service H–P systems. Blumberg states that H–P maintains 95% or greater market share in the relevant market and that the market revenues for the maintenance of all H–P hardware is over $600 million in 1986. Blumberg also states that service for H–P systems is more expensive than service for other comparable systems and that service on H–P systems is of a lower quality than is the service on comparable systems. Thus, Blumberg concludes that competition is harmed and that consumers are injured by H–P's alleged anticompetitive acts.

The plaintiff also supplied a declaration from Richard J. Gilbert. The Gilbert declaration also asserts or implies that H–P's conduct has chilled potential entrants in the relevant market and that both competition and consumers have been injured by that chilling effect.

The Court must view the evidence in the light most favorable to Datagate for the purposes of this motion. Viewing the evidence in that light, the Court finds that Datagate has raised sufficient issues of triable fact to compel this Court to deny H–P's motion for summary judgment as to the issue of a chilling effect. The Court cannot say that no reasonable jury could find for the plaintiff on the basis of the current record in this matter. Accordingly, the Court hereby DENIES H–P's motion for summary judgment to the extent that it is predicated on the lack of a chilling effect on potential entrants to the relevant market.

Accordingly, and with good cause appearing therefor, the Court hereby GRANTS in part and DENIES in part the defendant's motion for summary judgment.

*Pendent state law claims*

Claims five through eight of the Complaint assert various violations of state law. The defendant sought dismissal of the pendent state law claims in this matter. This Court has denied summary judgment as to certain federal claims before the Court. Consequently, the Court will retain jurisdiction over those federal claims. Therefore, the Court will continue to exercise jurisdiction over the pendent state law claims in this matter, and the Court hereby DENIES the motion to dismiss claims four through eight as they are enumerated in the Second Amended Complaint.

IT IS SO ORDERED.